of the Court of Appeals now resumes. Please be seated. Thank you. Our final case on calendar for argument today is L. B. v. United States. Counsel for Appellant, please approach. Please proceed. You beat me to the punch. I thought I would be efficient with the court's time, Your Honor. Thank you. Please proceed, Counsel. Thank you, Your Honor. I would ask for five minutes for rebuttal, please. All right. Could you please introduce yourself for the record? Yes, Your Honor. My name is John Heenan. I, along with Mr. Bechtold, represent L. B. And we have done so continuously for almost nine years now. And L. B. is a very brave woman, and she has been a very brave fighter for those nine years. She recognizes that this is, she doesn't know why she was chosen, but she has been, and she has very much been committed to be a catalyst to advance rights. And those rights are the rights of survivors. Those rights are the rights of Native people,  By population and by coverage, this circuit has the most Native people under its jurisdiction, over a million Native people. I think it's interesting that yesterday was the 100th anniversary of the Indian Citizenship Act, which was a law that was passed 100 years ago to try and address the corruption within the BIA. As this court has recognized previously in its 2021 decision, that's 8F 4th 868, at the time in 2021, there was a dichotomy that existed in Montana. The approximately 94% of people off reservation had an absolute right to pursue a civil, vicarious liability action against the employer of a state, county, or municipal law enforcement officer for exactly this type of conduct. And this court said to our Montana Supreme Court, hey, there's this dichotomy that exists because 94% of the people in the state have this right, 6% of the people, Native people residing on reservations don't have the right. And this court appropriately asked the Montana Supreme Court to address it as an issue of Montana law. Montana resoundingly said that LB did have the right to pursue vicarious liability. And I would say, don't take my word for it. The most important paragraph, I think, of what the Montana Supreme Court's announcement of Montana law was, was the first paragraph of the dissent. That's paragraph 27 of the LB case 2022-MT-166, where the minority, the dissenting judge, said that the Montana Supreme Court has reached a result, holding the federal government financially liable to an innocent victim for the outrageous, tortious conduct of a rogue federal law enforcement officer. That is an accurate statement of what Montana law has been since the Montana Supreme Court weighed in on this case. And so we were remanded to the district court. We won. The ball was on the one-yard line. The district court just needed to let us get it into the end zone. And instead, we got this 180 decision. Yes, Your Honor. Do you read the Montana Supreme Court's decision as requiring trial just automatically? I don't. And I anticipated that question. And I think the Montana Supreme Court was being deferential to this court, given the circumstances. It's a case with federal jurisdiction. This court certified a question. But as reflected in the dissent, Your Honor, Montana Supreme Court weighed through the factors and applied the facts of this case to reach the result that Officer Bullcumming's conduct was within the course and scope of employment. The dissent is not actually part of the opinion. The opinion actually says we conclude that whether Officer Bullcumming acted outside the scope of his employment when he used that employment as a vehicle to obtain LB's consent to sexual intercourse must be answered by the trier of fact. Yes, Your Honor. Both sides were arguing that this case, as far as I can tell with no new information, is appropriate for summary judgment when the Montana Supreme Court said, no, this has to go to a trier of fact. They did say that, Your Honor. I do think that it was in the context of not being able to say LB wins unequivocally because of the procedural posture of the case where it was sent on a certified question. I would say, though, in our mind, the record is complete. And that is a point that I want to touch on that isn't really – it was kind of round one, and I view this as round two. We hammered it in round one and then didn't really reiterate it necessarily in round two. I want to emphasize the posture of this case as it sits here now is in Montana, under Montana law, vicarious liability is an indirect cause of action against the employer. The direct cause of action is against the employee. We sued Officer Bullcoming under Montana law for Montana torts, and those torts were not just the sexual assault. They were kidnapping, false arrest, false imprisonment, deprivation of rights, abuse of process, infliction of emotional distress, and also sexual assault and battery. That's docket number one at paragraph 15. What's the status of that case? We prevailed, Your Honor. So that's the point that I want to make is we asserted various torts against Officer Bullcoming. He didn't appear. Default was entered. The district court accepted the allegations in our complaint as true. The district court recognized the cause of action that we raised. Our complaint against Officer Bullcoming was not isolated to sexual assault, both in terms of the torts that we claimed, but then also the allegations. I mean, we alleged, and it's all in docket number one, the complaint that he entered her home without permission, that he threatened to take away her kids, that he threatened her that she was going to lose her job, that he placed her under arrest and deprived her of her freedom. I guess I'm not quite sure what the – I mean, I understand that history. I'm not sure the point that you're trying to make. You aren't arguing that somehow the result of the default judgment is law of the case because that's not an actual deliberative decision. It's just a default because the officer didn't come and defend himself. Well, the district court reviewed, even though it was default, the district court, and that's docket number 88. We have case law that says that a default judgment can be binding in terms of merits issues? It's – the default is absolutely binding, and that's the point of – The default is binding as to the officer for sure. Yes, Your Honor. But I'm not sure that the resolution of the issues that weren't actually litigated and were just resolved at default can be binding as to the government. Well, there is no direct claim against the government, so the government is bound by both the facts and the causes of action that were asserted against the employee. Those claims, Your Honor, respectfully were adjudicated. And even to show the length that the – Doesn't that deny the government the opportunity to defend itself in the way the officer chose not to? Well, a couple things I'd say, Your Honor. The United States chose not to participate in that proceeding. They had every ability to. They were a party to the case and had notice. And for instance, I guess one thing I just want to emphasize is, I mean, that we didn't just present a paper to the court to sign. We had a hearing. We presented evidence. We had a counselor talk about all the psychological effects that L.B. endures because she had a child that's the product of this incident. And the counselor – I asked for $10 million. The district court considered it for five-and-a-half months and said, no, $1.6 million. So the district court very much did make liability findings against Officer Bullcoming. And the way that Montana law works, Your Honor, is, yes, there is no direct claim against the government. It's just an indirect claim. So now the United States, as the employer, is bound by the facts and the causes of action that were prosecuted successfully against the officer. Was that procedural history with regard to the claims against the officer known to the Montana Supreme Court when it answered the certified question? The factual history was as recited by this court in the certified – Let me make it more specific. Was the Montana Supreme Court aware of the default judgment? I believe so, Your Honor. So then I guess I'm still questioning your argument that you're making. If that is true, then why wouldn't the – and if you were right in the argument you're making, why wouldn't the Montana Supreme Court just say, based on the default judgment, this case is over, the government's liable? I think procedurally, Your Honor, because the Montana Supreme Court didn't have jurisdiction except for the limited certified question. I mean, the federal court had jurisdiction. It sent it for a limited question, giving Montana the chance to weigh in on its law, and Montana has weighed in on its law. And the other things I wanted to, I guess, just expand on or raise – Before you do that, counsel. Yes, Your Honor. I think we understand your point. Sorry, Your Honor. But what I wanted to ask you is it appears that the pivotal issue before the district court, which the district court relied on – and correct me if my understanding is not consistent with yours – is that at bottom, the officer was a rogue officer, was not acting within his official capacity when he committed these acts. Do you agree that that was the basis upon which the district court granted judgment in favor of the defense? Yes, Your Honor. Tell me why that was wrong. Well, I guess what's interesting, kind of getting ready for this hearing, round one that I'll call it, the district court went through the restatement factors, found some of those restatement factors favored L.B. actually, but then said this Montana Supreme Court, the McGuire case, which is 835 P. 2nd. 755. That's a 1992 decision. And the district court said essentially Montana law under McGuire says that sexual assault is always outside the course and scope of employment. We understand what happened. We understand that the Montana Supreme Court disagreed with that and then said that the scope of employment is a question for the trier of fact under essentially the facts of this case. Then it gets remanded and the district court, my understanding, is based on the deposition testimony regarding motive that that's summary judgment in favor of the employer. So my understanding of your argument is either that testimony is not credible, so summary judgment was, or there's a credibility dispute, so summary judgment is inappropriate, or the district court defined the relative scope of conduct too narrowly, and that precludes summary judgment in favor of the employer. A lot of your arguments are geared towards why your motion for summary judgment was denied, but we have to deal with them separately. So here, summary judgment was granted in favor of the employer. I would appreciate you focusing your argument on why that decision, in your opinion, was error. Why shouldn't summary judgment in favor of the United States? Why was that improper, in your opinion?  Well, thank you, Your Honor. A couple of things. To answer your question, Your Honor, and Justice Rawlinson's at the same time. Judge, not just. Judge Rawlinson, excuse me. On round two, so what are the errors? On round two, the district court said, I'm going to disregard what the Montana Supreme Court said the act is. And if you look at Montana law with respect to vicarious liability, the analysis is not what's the tortious criminal act. We had the Cornett case where somebody, a mining employee, used a shovel to beat somebody up with a shovel. If we analyzed it through that lens, the employer would say, we don't employ people to beat other people with a shovel. And then the Brendan case, which came out subsequent to district court round one, but before this court certified it to the Montana Supreme Court, this court said to the Montana Supreme Court, well, you've got this McGuire case that seems to say sex assault can never be within the course and scope, but now you've issued this Brendan decision, which is a really strange case where essentially a city employee on a Saturday at his house calls a tip line and lies about his coworker to try and tank his employment at a new job. And the Montana Supreme Court said in Brendan, that's within the course and scope of employment. And so this court said, okay, you've got McGuire, which seems to say never sex assault, but then you just issued this Brendan decision, which is arguably even further afield than what Officer Bullcoming did here. And plus, under Montana law, with a non-delegable duty, officers are liable, plus this dichotomy where 6% of Montanans don't have the same rights as 94%. What are you going to do about it? And so district court gets the Montana Supreme Court and she puts it in footnote two. She says, I'm going to disregard what Montana says the act is, even though the Montana Supreme Court said you need to carefully analyze the act. That's at paragraph 15 of its decision, because they say the act is what informs whether it arose out of employment. But, Counselor, isn't your stronger argument the fact that there is a potential issue of fact because of the contradiction between the plea colloquy and the deposition? Isn't that your stronger argument? I think they're equally strong, Your Honor. I think it was, frankly, shocking to us when Officer Bullcoming, who was still in federal custody, has this private conversation with the assistant U.S. attorneys. He shows up for deposition. He recants the testimony that he gave under oath to the same district court that resulted in a very lenient sentence for his conduct, and all of that is accepted. But I would say, Your Honor, I don't think we need to get there because I think the district court committed a clear legal error when she disregarded Montana's statement of what the act is that needed to be analyzed. The act here is beyond just the act of sexual assault. The act includes all the contacts that Officer Bullcoming committed against my client, going into his house, threatening her, taking her into custody. Those are all the actions that he was sued for and adjudicated liable for. And so to narrowly focus on the tortious conduct eviscerates Montana law because nobody's ever going to be held vicariously liable if all we're looking at is the tortious criminal act. Well, I think my trouble is that it seems clear to me that the Montana Supreme Court rejected the idea that the motive with respect to the sexual conduct itself was the only thing that's relevant. They say over and over again, even if that particular, the sex, essentially, was for his own personal sexual gratification, that does not preclude a finding that he was acting within the scope of employment. But at other times they don't seem to say, they seem to say there's some that you have to define the wrongful act more broadly than that. That seems clear. What's not clear to me is what scope of conduct, how broad the scope of conduct is that they are saying we should look at. It's not just the sexual activity. It's something broader than that. The Montana Supreme Court seems to say it could be the wrongful deprivation, but then we have the problem with wrongful deprivation can't be the tort under the FTCA. So then it has to be some other course of conduct that constitutes the tort. So can you identify what state law tort would form the basis of liability that would define the scope of conduct for which his motive is relevant? Yes, Your Honor. Thank you. And that's the point that I was trying to make inartfully at the beginning about what were the clauses of action that were assertive. Any of them other than wrongful deprivation. Yes, Your Honor. Infliction of emotional distress, deprivation, false arrest, false imprisonment, abuse of process. Abuse of process is a Montana tort that's specifically enumerated under the FTCA. So I think the district court also committed error when the court reframed what's the tortious conduct under this FTCA analysis when we'd already enumerated and succeeded against the officer on specific causes of action. And I do think it was disregard of the Montana Supreme Court's opinion to change the act when the Montana Supreme Court went to lengths to explain we're not just looking at the sex act. And I would say, Your Honors, that also it was error to do this subjective intent of the rapist and have that be an element that the victim of a sexual assault has to prove. No victim could ever prove that. And it was not enumerated by the Montana Supreme Court as a required element. And so to your point, Judge Rawlinson, I don't think this – I mean, we can have this fight about what did the officer – what was he really thinking and what were his motives, but I don't – But the Montana Supreme Court said it's an issue of fact whether or not he was acting within his authority. And that's where it leaves us in terms of how we should resolve this case. And when we sent the case to the Montana Supreme Court, we said we would abide by the Montana Supreme Court's decision. So that's our guidance from the Montana Supreme Court. And so if it says it's an issue of fact, then that's our starting point. And I think your stronger argument is, yes, there is an issue of fact and there should not have been summary judgment granted because of these two very differing statements by the officer. But if you want to argue it differently, that's fine with me. Understood, Your Honor. I see I ran out of my reserve time. Well, I'll give you a couple of minutes. Thank you, Your Honor. I do just want to say that, yes, we should certainly win on that, but I don't think that it's Montana law and I don't think we should be remanded to have to climb inside the head of a police officer that did these acts to my client. But we asked the Montana Supreme Court to tell us what to do and they told us. And we said we will abide by your ruling. And so that's our commitment. We have to abide by the Montana Supreme Court ruling. I think if this Court's committed to abide by the Montana Supreme Court ruling, then L.B. wins all day because the Montana Supreme Court clearly said that L.B. should win. The Montana Supreme Court said it's a question of fact whether or not he acted within the course and scope of his employment. So that doesn't mean you win. That means you get an opportunity to try your case against the United States. That's how I read it. I don't know how mine. Then if that's the view of the Court, which I certainly understand, as we asked in our brief and would reiterate, I would ask that this case be reassigned to a different district court judge if this case is remanded. Do you think the district court judge is biased? I think that the district court disregarded the Montana Supreme Court. I think that it was strange that the district court addressed L.B. at Officer Bullcumming's sentencing, and I think that the process by which the government was allowed to insulate Officer Bullcumming's deposition testimony was unfair to my client. Do you think that the district court would have difficulty putting aside its expressed views of this case? I think the district court explicitly said that it was disregarding Montana law with respect to what the act is. That's footnote two of the district court's order, which is troubling to me anyway. Thank you, Counselor. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honor. Randy Tanner for the United States. The Montana Supreme Court did give this court direction on how to decide this case, and it did so in the two-prong test that it articulated, and that was the basis for the district court's granting summary judgment in favor of the United States, because when Bullcumming assaulted L.B., he did so purely for his personal interest and not some interest of the BIA. Counsel, I want to cut to the chase, because I understand that you're representing this as a two-prong test, but the way I read the decision, you're taking that out of context. I don't see the court itself representing that as a two-prong test, as rather a summary of a prior decision. And then it goes on and on and on and says repeatedly that even though motive is a factor, that you can't just consider the officer's motive with respect to the sexual conduct and that it could still be, even if wrongful, even if against the law, even if not authorized, even if purely for his self-gratification, that it could still be within the scope of employment, that there could be mixed motive with respect to other aspects, and that this is a question for the trier of fact. And then I see on remand a deposition testimony that only addresses motive with respect to the sexual encounter and no other aspects of the tortious conduct. Why does that entitle the government to summary judgment here when the Montana Supreme Court explicitly said, even if the sexual conduct is for the employee's own self-gratification or self-benefit, this could still be within the scope of employment and it's for a trier of fact? So a couple different points on that question, because there's a bit to unpack there. And what the Montana Supreme Court said is that if you have a mixed motive, if there's both personal motivation and a motivation to serve the employer, then that's a circumstance where you might have conduct that arises in the course and scope of the employment. But paragraph 17 of the Montana Supreme Court's decision expressly articulates those two considerations that you have to keep in mind when analyzing course and scope. And the second of those considerations was, quote, the wrongful act, quote, the wrongful act was at least partially motivated by an intent or purpose to serve the interest of his employer. And so the converse of that is if the employee was motivated solely by personal interest, then the act is not within the course and scope. That's not consistent with what the Montana Supreme Court said, though. Your argument is not consistent with what the Montana Supreme Court said. At bottom, the court said this is an issue of fact. That's right. And in this Court's, as we talked about in our brief, in the West decision, in this Court's West decision, this Court has recognized time and again that when you have facts that are undisputed, then issues are appropriate for summary judgment. But what about the colloquy, the plea colloquy? How is this undisputed if in court when he pled guilty, he accepted that he was abusing his position when he committed these acts? That's a classic question of fact, then, because he says one thing in his plea colloquy and says a different thing in his deposition. Well, in the issue of coercion, that's what came up in his deposition and in the plea colloquy also was whether or not he coerced L.B. into having sex with him. Well, whatever he did, he admitted that it was under the abuse of his position, which would say he was within the scope of his employment. Otherwise, he could not have utilized his position to coerce her. Well, and that's a critical point, Your Honor, and a distinction I want to make is that abuse of process, abuse of process is not the same as being within the coercing scope of employment. Just because the officer was on duty at the time and wearing a badge does not mean that the officer was acting in the coercing scope of the employment. And if you look at the Montana Supreme Court's decision in paragraph 17, it makes that point. The court says if an on-duty police officer obtains consent by misusing his official authority, that's the abuse of process, then you analyze coercing scope by looking to the wrongful act and whether it arose out of the employment and was partially motivated to serve the employer's interest. I tend to agree that there's probably a ton of overlap between undercolor of law and within coercing scope of employment, but maybe not perfect overlap. And it's not an element of the crime he was convicted of to be within the coercing scope of his employment as Montana Supreme Court has defined it. What I'm curious about is are there any additional facts beyond the deposition testimony that Judge Rawlinson has referenced from the time that the Montana Supreme Court gave us its guidance to now? Yes, there is, Your Honor. And in fact, you could disregard Officer Bull Cummings' deposition testimony entirely and you'd be forced to reach the same conclusion. Because the undisputed facts... I guess I'm confused. I'm asking about are there new facts? There are facts that weren't articulated in the certified facts that were transmitted to the Montana Supreme Court. Okay, so what are the new facts? It was Bull Cummings and L.B.'s longstanding personal relationship that they had. They had known each other for 30 years. Bull Cummings had always had a romantic interest in her. L.B. stated that they had been neighbors. They had gone to grade school together. Their family members had been friends. And on the night of the assault, L.B. asked Bull Cummings, quote, you've always had a crush on me since a long time ago. How does that affect the scope of employment? Because what that shows is that his interest in sexually assaulting her was purely personal. He had this personal relationship, a crush on L.B., and he was not sexually assaulting her to serve some interest of the BIA. There is no conceivable interest that he was serving. So your argument is if the Montana Supreme Court had known about that history, it would not have concluded there's a question of fact here. It would have just said there's a definitive answer. What, in the Montana Supreme Court opinion, leads you to that conclusion? What the Montana Supreme Court said is that this is indeed a question of fact, course and scope of employment. I think everybody agrees with that, that ultimately course and scope is a question of fact. And that was the reason for the remand, so that further facts could be gathered. And we did that. I'm trying to drill down on this. I think your argument is we now have some more facts, and so it's no longer a question of fact. There's a determinative answer. And I'm asking you, if those new facts that you're relying on were in front of the Montana Supreme Court, what in that decision suggests to you that that court would have concluded it was a definitive answer and still not a question of fact? Because what the Montana Supreme Court said in that decision is that there was no way, there were no facts before it that would have allowed it to assess Bull Cummings' personal motive. And that's what it said in the decision. But now we have those. It squarely rejects the idea that his motive with respect to the sexual act itself was determinative. It assumes. It says even if that sexual conduct is for the employee's self-gratification, a reasonable trial fact could still find that it's within the scope of employment, in part because you have to define the wrongful act more broadly. And that affects how you define the wrongful act and then the context in which it occurs, all affects the scope of employment analysis. So I don't understand how even assuming that Officer Bull Cumming was motivated purely for self-gratification in having sex with L.B., that changes the outcome of the decision when the Montana Supreme Court said essentially even assuming that, this could still be within the scope of employment. I think what the Montana Supreme Court there was saying was whether, you know, if Bull Cumming had some sort of mixed motive or was at least partially motivated to serve the interest of the employer. In defining the wrongful act more broadly than just the sex itself. In paragraph 15 of the Montana Supreme Court, that's where it talks about the need to focus on what the act at issue is. And I'll admit that paragraph 15 of the Montana Supreme Court's decision
judges: RAWLINSON, FORREST, SUNG